UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERTO MENDEZ,<br> Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:18cv1460(MPS) |
| OFFICER LIS, ET AL.,<br> Defendants. | :<br>:<br>: |

## **RULING AND ORDER**

  The plaintiff, Gilberto Mendez, is currently living in New Britain, Connecticut. He initiated this action by filing a complaint naming Correctional Officers Lis and Garibaldi, Captains C. Scarmozzino and Costanzo, Captain King, and Security Risk Group Coordinator John Aldi as defendants. *See* Compl., ECF No. 1. At the time the plaintiff filed the complaint, he was confined at Northern Correctional Institution. *See id.* at 2.

  The plaintiff alleged that on August 21, 2015, at Manson Youth Institution, Officer Lis issued him a disciplinary report for security risk group affiliation and that Captain King, who presided over the disciplinary hearing held on August 31, 2015, found him guilty of the disciplinary charge. *See id.* at 4-5. The plaintiff claimed that there was insufficient evidence to support the guilty finding. *See id.* at 5.

  On November 9, 2018, the court dismissed the Eighth and the Fourteenth Amendment conditions of confinement and due process claims without prejudice *See* Initial Review Order ("IRO"), ECF No. 10. The court informed the plaintiff that he could move to reopen the case and file an amended complaint if he was able to allege facts describing how one or more of the defendants violated his Fourteenth Amendment rights to procedural due process in connection with the disciplinary hearing held on August 31, 2015, and/or could allege facts indicating that a

defendant was involved in or aware of a condition or conditions of confinement that deprived him of a serious human need. *See* IRO at 10. On November 15, 2018, the Clerk entered judgment in favor of the defendants. *See* ECF No. 11.

In response to the dismissal of the complaint, the plaintiff has filed an amended complaint naming Lieutenant King, Director of Security Christine Whidden, Warden Erfe, and Counselor Supervisor John Aldi as defendants. *See* Am. Compl., ECF No. 12. The plaintiff did not, however, file a motion to reopen the judgment entered on November 15, 2018. Despite the fact that the plaintiff has not filed a motion to reopen, the court will liberally construe the amended complaint as including such a motion and will grant it. For the reasons set forth below, the case is reopened and the amended complaint will be dismissed in part.

**I.    Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that

includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to liberally interpret a complaint filed by a *pro se* litigant, the complaint still must include sufficient factual allegations to meet the standard of facial plausibility. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("Because Fowlkes appeared pro se before the District Court, he is entitled to special solicitude, and we will read his pleadings to raise the strongest arguments that they suggest. . . . At the same time, a *pro se* complaint must allege enough facts to state a claim to relief that is plausible on its face.") (internal quotation mark and citations omitted).

## II.     Facts

The plaintiff alleges that he was a convicted prisoner as of August 21, 2015. *See* Am. Compl., ECF No. 12, at 4 ¶ 2. As indicated by the court in its ruling addressed to the complaint, however, State of Connecticut Judicial Branch records reflect that a judge did not sentence the plaintiff until October 28, 2015.[1] *See* IRO at 4 n.1. Thus, the court considers the plaintiff to have been a pretrial detainee as of August 21, 2015.

On that date at the Manson Youth Institution, Officer Lis conducted a search of the plaintiff's cell and discovered a photograph depicting the plaintiff. *See* Am. Compl. at 4 ¶ 2; Ex.

---

[1] The State of Connecticut's Judicial Branch website reflects that on October 28, 2015, pursuant to the plaintiff's plea of guilty to one count of stealing a firearm in violation of Connecticut General Statutes § 53a-212, a judge sentenced the plaintiff to forty-two months of imprisonment followed by three years of special parole. This information may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions - by Docket Number using H14H-CR15-0680898-S (Last visited on March 27, 2019).

1, ECF No. 12-1, at 1. The plaintiff alleges that the photograph depicts him displaying a "4-20 [hand] sign to represent the day the picture was taken, and the hand sign represent[s] the National Weed Smokers day of 4-20." *See id.* at 5 ¶¶ 9-10. Officer Lis issued the plaintiff a disciplinary report for security risk group affiliation because he identified the plaintiff's hand sign in the photograph as a sign used by the Latin Kings gang. *See id.* ¶¶ 6-8, Ex. 1 at 1. Later that day, Captain Scarmozzino and Officer Lis removed the plaintiff from general population and placed him in segregation pending the outcome of the disciplinary report. *See id.* at 4 ¶ 4.

On August 24, 2015, the plaintiff met with Disciplinary Investigator Garibaldi about the disciplinary report. *See id.* at 6 ¶ 11. The plaintiff denied being a member of the Latin Kings and stated that the hand sign that he displayed in the photograph was not a hand sign of the Latin Kings, but was a hand sign representing "4-20 the day the photo was taken and the National Weed Smokers Day." *See id.* at 6 ¶ 12. At this meeting, the plaintiff made the decision not to utilize advocate services or present any witnesses at the upcoming hearing. *See id.* ¶ 13.

On August 31, 2015, the plaintiff attended a disciplinary hearing presided over by Lieutenant King. *See id.* ¶¶ 14-15. During the hearing, Investigator Garibaldi read his report into the record. *See id.* ¶ 16. The plaintiff attempted to explain that the hand sign that he displayed in the photograph was not a hand sign of the Latin Kings gang, but Lieutenant King informed the plaintiff that she "did not want to hear any of that garbage." *See id.* at 7 ¶ 18. At one point, Lieutenant King asked the plaintiff to describe his race/nationality. *See id.* ¶ 19. The plaintiff stated that he was Puerto Rican and resided in Hartford, Connecticut. *See id.* ¶ 20. Lieutenant King commented that the plaintiff must be a member of the Latin Kings because he was a Puerto Rican from Hartford. *See id.* Based on her review of the evidence, including the

incident report, the photograph, and other documentation, Lieutenant King concluded that the plaintiff was guilty of the charge of security risk group affiliation. *See id.* ¶ 21. When the plaintiff asked to see the other documentation that supported Lieutenant King's finding, she indicated that she was not required to make that evidence available to him. *See id.* at 8 ¶¶ 22-23.

After the hearing, the plaintiff received a notice explaining that, as a result of the August 31, 2015 disciplinary hearing, he was found to be a verified member of the Latin Kings and would be placed in the Security Risk Group Administrative Segregation Program ("SRG Program"). *Id*. at 8-9 ¶ 26. The plaintiff did not receive a *separate* classification hearing to determine whether his security risk group affiliation warranted placement in the SRG Program. *Id*. at ¶ 28. And at no time before or during the hearing did Lieutenant King inform the plaintiff that the hearing would determine his placement in the SRG Program *in addition to* adjudicating the disciplinary issue. *See id.* at 8-9 ¶¶ 25, 27. The plaintiff therefore did not receive advance notice that the August 31, 2015 hearing would serve as both a disciplinary hearing and a classification hearing.

On September 21, 2015, Warden Erfe, Director Whidden, and Counselor Supervisor Aldi transferred the plaintiff from Manson Youth Institution to Corrigan Correctional Institution for placement in the SRG Program. *See id.* at 9 ¶¶ 29-31. The plaintiff claims that during his placement in the SRG Program at Corrigan, he was confined in his cell for twenty-three hours a day, he was deprived of all out-of-cell recreation time, he could not participate in educational, vocational or job training programs or mental health or counseling sessions, and he was not eligible for a parole hearing or to earn Risk Reduction Earned Credits. *See id.* at 10 ¶¶ 33-34. He states that he remained designated as a security risk group member until May 31, 2016. *See*

5

*id.* ¶ 35. During his confinement in the SRG Program, Warden Erfe, Director Whidden, and Counselor Supervisor Aldi neglected to conduct periodic reviews to determine whether his continued confinement in the Program was necessary. *See id.* at 11-12 ¶¶ 38-39.

### III.    Discussion

The plaintiff contends that the defendants violated his Fourteenth Amendment procedural due process rights in three ways: (1) Lieutenant King's finding that he was guilty of the charge of being affiliated with a security risk group was not supported by sufficient evidence, (2) Warden Erfe, Director Whidden, and Counselor Supervisor Aldi placed him in the SRG Program at Corrigan without a hearing, and (3) Warden Erfe, Director Whidden, and Counselor Supervisor Aldi failed to conduct periodic reviews of his continued placement in the SRG Program.[2] The plaintiff seeks compensatory and punitive damages and injunctive relief in the form of an order directing the defendants to expunge the August 21, 2015 disciplinary report from his Department of Correction record.

#### A.    Official Capacity Claims - Money Damages

The plaintiff seeks compensatory and punitive damages from the defendants. The Eleventh Amendment divests the district court of subject matter jurisdiction over claims for money damages against state officials acting in their official capacities unless the state has waived Eleventh Amendment immunity or Congress has abrogated it. *See Kentucky v. Graham*,

---

[2] The court notes that although the plaintiff describes the conditions that allegedly existed during his confinement in the SRG Program at Corrigan as being more restrictive than conditions in general population, he does not include a conditions of confinement claim in the amended complaint. Even if the court were to construe the amended complaint as asserting such a claim, the plaintiff has not alleged that any defendant was aware of or involved in the conditions that allegedly existed at Corrigan. The court explicitly informed the plaintiff in its prior IRO that he must allege facts to show how each defendant was involved in the allegedly wrongful conduct.

473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity, *see Quern v. Jordan*, 440 U.S. 332, 343 (1979), and the plaintiff does not allege that the defendants have waived their Eleventh Amendment immunity. Accordingly, the claims for damages against the defendants in their official capacities are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

      **B.**      **Procedural Due Process – Disciplinary Report**

The plaintiff challenges the finding that he was guilty of the Class A disciplinary offense of security risk group affiliation. The plaintiff seeks monetary damages and injunctive relief in connection with this claim.

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).[3]

---

*See* IRO at 10.

[3] In *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court reexamined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." *Id.* at 474. The Court explained that in the prison setting, liberty interests protected by Due Process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court held that Conner's confinement in segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. Thus, an inmate has a protected liberty interest only if the disciplinary sanctions caused him to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of prison life." *Id.*

      The Second Circuit has held, however, that "*Sandin* does not apply to pretrial detainees." *Benjamin v. Fraser*, 264 F.3d 175, 188-89 (2d Cir. 2001). Accordingly, a pretrial detainee need

A pretrial detainee has a liberty interest under the Due Process Clause of the Fourteenth Amendment in avoiding conditions of pretrial confinement that amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). "Not every disability imposed during pretrial detention," however, "amounts to 'punishment' in the constitutional sense." *Id.* at 537. Rather, a court must determine "whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. Thus, a condition, restriction or sanction imposed on a pretrial detainee by a prison official for a legitimate governmental purpose does not constitute punishment. *See Block v. Rutherford,* 468 U.S. 576, 584 (1984) ("Absent proof of intent to punish ... this determination 'generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'") quoting *Bell,* 441 U.S. at 538); *Benjamin*, 264 F.3d at 188 (a pretrial detainee's "liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty[; thus,] restrictions on pretrial detainees ... may not amount to punishment....") (citations and internal quotation marks omitted).

When a restraint or condition is imposed for disciplinary or punitive reasons, a pretrial detainee is entitled to the protections set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974). *See Benjamin*, 264 F.3d at 189-190. "The *Wolff* Court, while holding that full adversary proceedings are not required for disciplinary deprivations of liberty in the prison setting, required written notice, adequate time to prepare a defense, a written statement of the reasons for action

---

not show that an imposed restraint imposes atypical and significant hardships to state a deprivation of a liberty interest protected by procedural due process.

taken, and a limited ability to present witnesses and evidence." *Id.* at 189 (citing *Wolff*, 418 U.S. at 561-570).

The plaintiff asserts that Lieutenant King found him guilty of the disciplinary charge of security risk group affiliation after the August 31, 2015 hearing. The plaintiff contends that Lieutenant King would not listen to his explanation of the meaning of the handshake depicted in the photograph and that there was insufficient evidence to support the guilty finding. The plaintiff does not indicate, however, that Lieutenant King imposed any sanctions pursuant to the guilty finding—as required for the *Wolff* protections to attach. The court notes that in its prior order, it cautioned the plaintiff that if he sought to raise a challenge to the disciplinary hearing held on August 31, 2015 in an amended complaint, he must include the sanctions, if any, that the disciplinary hearing officer imposed against him. *See* IRO at 10. Although the plaintiff discusses his placement in the SRG Program and the resulting deprivations he was subjected to, that placement was not a sanction imposed as a result of the guilty *disciplinary* finding, but was the result of an *administrative* decision classifying the plaintiff a security risk group member.[4] In short, the SRG Program and resulting deprivations were the result of the classification decision as opposed to the disciplinary finding, and the plaintiff does not allege any facts setting out a sanction resulting from the disciplinary finding.

The court therefore concludes that the plaintiff does not state a claim that Lieutenant King punished him in connection with her August 31, 2015 finding that he was guilty of a disciplinary offense. Absent the deprivation of a liberty interest, the plaintiff was not entitled to procedural due process protections in connection with the issuance of the disciplinary report.

---

[4] The plaintiff's claims stemming from this designation are discussed in Section III.C.

Accordingly, the court dismisses this Fourteenth Amendment procedural due process claim against Lieutenant King. *See* 28 U.S.C. § 1915A(b)(1).

      C.      **Procedural Due Process – Placement in Security Risk Group Program**

The plaintiff alleges that he did not receive a separate hearing to determine whether he should be placed in the SRG Program. He states that neither Lieutenant King, nor the other defendants informed him that the disciplinary hearing was also a classification hearing for purposes of determining whether to place him in the SRG Program. He contends that the conditions under which he was confined at Corrigan were much more restrictive than the conditions in general population and that he remained confined pursuant to the SRG Program for nine months.

As indicated above, if a condition or restraint is imposed for disciplinary or punitive reasons, the pretrial detainee is entitled to the protections set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974). When the purpose of the restraint is administrative, however, the less-stringent procedures set forth in *Hewitt v. Helms,* 459 U.S. 460 (1983) apply. *See Benjamin*, 264 F.3d at 189-190. Pursuant to *Hewitt,* an inmate "must merely receive some notice of the charges against him and an opportunity to present his views." 459 U.S. at 476.

Here, the plaintiff suggests that his placement in the SRG Program was for punitive reasons or constituted punishment. The Second Circuit has explained that administrative decisions may involve punishment. *Benjamin v. Fraser*, 264 F.3d 175, 183 (2d Cir. 2001) (affirming a district court decision concluding that certain restraints "involve punishment as well as administrative justification" and that the defendant was therefore subject to the *Wolff* standard); *id.* at 188 (affirming district court decision noting that despite the "formal

characterization of [a certain administrative] status as a non-punitive safety measure," the resulting sanctions had "a severe and deleterious effect on pretrial detainees tantamount to punishment"). As such, the plaintiff may be entitled to the protections set forth in *Wolff*. However, even if his placement was only for administrative reasons, and thus subject to the less-stringent procedures set forth in *Hewitt*, the plaintiff has alleged that he did not receive a hearing or proceeding of any kind to determine whether he should be placed in the SRG Program. Absent knowledge or notice that the disciplinary hearing was also a classification hearing, it is apparent that the plaintiff did not have an opportunity to defend against the change in his classification. The court concludes that the plaintiff has stated a plausible procedural due process claim with regard to his placement in the SRG Program. That claim will proceed against Lieutenant King, Warden Erfe, Director Whidden and Counselor Supervisor Aldi in their individual capacities.

### D. Procedural Due Process – Periodic Reviews

The plaintiff alleges that during his nine-month confinement in the SRG Program at Corrigan, Warden Erfe, Director Whidden and Counselor Supervisor Aldi failed to conduct any periodic reviews of his status. In *Hewitt*, the Supreme Court held that "prison officials must engage in some sort of periodic review of the confinement of [an] . . . inmate[s]" placed on administrative segregation or detention to ascertain "whether [the inmate] remains a security risk." 459 U.S. at 477 n.9. These reviews are necessary to ensure that prison officials are not using "administrative segregation . . . as a pretext for indefinite confinement of an inmate." *Id.* The Second Circuit has observed that the periodic reviews of an inmate's placement in administrative segregation are "flexible and may be based on 'a wide range of administrative

considerations,' including but not limited to observations of the inmate in Ad[ministrative] Seg, 'general knowledge of prison conditions,' misconduct charges, ongoing tensions in the prison, and any ongoing investigations." *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) (quoting *Hewitt*, 459 U.S. 477 n.9).

The court concludes that the plaintiff has asserted facts to state a plausible procedural due process claim relating to his continued confinement on administrative segregation status without meaningful, periodic reviews. That claim will proceed against Warden Erfe, Correctional Counselor Aldi and Director Whidden in their individual capacities.

## ORDERS

The court enters the following orders:

**(1)** The Amended Complaint, [**ECF No. 12**], is also construed as a motion to reopen the judgment, and the motion to reopen is **GRANTED**. The Clerk shall reopen the case. The claims in the Amended Complaint, [**ECF No. 12**], are **DISMISSED** in part as follows: The claims for damages against the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) and the Fourteenth Amendment procedural due process claim that arises from the decision by Lieutenant King to find the plaintiff guilty of the disciplinary report charging him with security risk group affiliation is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Fourteenth Amendment procedural due process claim that arises from the plaintiff's placement in the SRG Program in 2015 will proceed against Lieutenant King, Warden Erfe, Director Whidden and Counselor Supervisor Aldi in their individual capacities and the Fourteenth Amendment procedural due process claim that arises from the plaintiff's continued

confinement in the SRG Program without meaningful, periodic reviews will proceed against Warden Erfe, Director Whidden and Counselor Supervisor Aldi in their individual capacities.

**(2)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of Lieutenant King, Warden Erfe, Director of Security Christine Whidden and Counselor Supervisor John Aldi and mail a copy of the amended complaint, this order and a waiver of service of process request packet to each defendant in his or her individual capacity at the confirmed addresses. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants King, Erfe, Whidden and Aldi shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)** The Clerk shall send a courtesy copy of the amended complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**(7)** If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify defendants or defense counsel of his new address.

SO ORDERED at Hartford, Connecticut this  16  day of   April  , 2019.

/s/ MICHAEL P. SHEA
Michael P. Shea
United States District Judge